UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

MICHIGAN SPILL RESPONSE d/b/a              )
METRO TOWING, LLC,                         )
                                           )
    Plaintiff,                             )
                                           )
       v.                               ) Case No: 2:23-cv-13144-SDK-APP
                                           )
HL MOTOR GROUP, INC., et al.,              )
                                           )
    Defendants.                            )

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFF'S COMPLAINT

Defendants, HL Motor Group, Inc., Old Republic Insurance Company of Canada, incorrectly named as Old Republic General Insurance Group of Canada, Inc., Old Republic International incorrectly named as Old Republic General Insurance Group of The United States, Gallagher Bassett and Custard Insurance Adjusters, Inc., by their attorneys, Lewis Brisbois Bisgaard & Smith LLP, for their Answer and Affirmative Defenses to the Plaintiff's Complaint, state as follows:

## Parties, Jurisdiction and Venue

1.    Plaintiff, Michigan Spill Response, DBA; Metro Towing, LLC, (MSR) is a Michigan Corporation whose principal place of business is in Flint, Michigan.

**ANSWER:**    Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 1 of plaintiff's Complaint.

2.    Defendant, Highlight Motor Group, HL Motor Group, Inc. (Highlight), is a Canadian and United States corporation whose principal place of business and registered offices are in Concord, Ontario, Canada, Santa Fe Springs, California, and Parsippany, New Jersey.

**ANSWER:**    Defendants admit the averments contained in Paragraph 2 of plaintiff's Complaint.

3.     Defendant, Old Republic General Insurance Group of Canada, Inc. (Old Republic Canada), is a corporation who, upon information and belief, is incorporated in Hamilton, Ontario, and has its principal place of business in Hamilton, Ontario.

**ANSWER:**   Defendants admit that Old Republic Insurance Company of Canada, incorrectly named as Old Republic General Insurance Group of Canada, Inc., is incorporated and has a principal place of business in Hamilton, Ontario.

4.     Defendant, Old Republic General Insurance Group of The United States, (Old Republic US), is a corporation who, upon information and belief, is incorporated in the state of Delaware, has its principal places of business in Chicago, Illinois.

**ANSWER:**   Defendants admit that Old Republic International, incorrectly named as Old Republic General Insurance Group of The United States, is incorporated in the State of Delaware and has a principal place of business in the State of Illinois.

5.     Defendant, Gallagher Bassett (Gallagher), is a corporation who, upon information and belief, is incorporated in the state of Illinois, and has its principal place of business in Downers Grove, Illinois.

**ANSWER:**   Defendants admit the averments contained in Paragraph 5 of plaintiff's Complaint.

6.     Defendant, Custard Insurance Adjusters (Custard), is a corporation who, upon information and belief, is incorporated in the state of Georgia, and has its principal place of business in Peachtree Corners, Georgia.

**ANSWER:**   Defendants admit the averments contained in Paragraph 6 of plaintiff's Complaint.

7.     Per MCL 600.705(2), jurisdiction is proper under Michigan's Long-Arm Statute because Defendant, Highlight Motor Group, caused an accident to occur on a highway in the state of Michigan, did not pay for remediation services, and thus resulted in an action for tort.

**ANSWER:**   Defendants make no answer to the averments of Paragraph 7 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or

denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

8.     Per MCL 600.705(5),jurisdiction is proper under Michigan's Long-Arm Statute because Defendant, Highlight Motor Group, contracted for remediation services to be rendered by a Michigan company appertaining to a spill that occurred in Michigan.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 8 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

9.     Per MCL 600.162l(b), venue is proper, as none of the Defendants reside in, or have their principal place of business, in Genesee County, but Plaintiff's principal place of business is within Genesee County.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 9 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

10.     Per MCL 600.8301(1), this honorable court has exclusive jurisdiction over this matter, as the amount in controversy exceeds the statutory maximum.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 10 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

11.     Per MCL 600.705(2), jurisdiction is proper under Michigan's Long-Arm Statute because the Defendant, Old Republic General Insurance Group, Inc., through its insured, caused an accident to occur on a highway in the state of Michigan, did not pay for remediation services, and thus resulted in an action for tort.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 11 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

12.     Old Republic General Insurance Group of the United States, by owning a subsidiary, Old Republic Insurance Group of Canada, thus insuring a corporation whose actions avail themselves of the motor vehicle laws and laws appertaining to insurance in the state of Michigan, act as sufficient "minimum contacts" in the state of Michigan such that the "maintenance of a suit does not offend traditional notions of fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).

**ANSWER:**     Defendants make no answer to the averments of Paragraph 12 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

13.     Further, based on the fact that all transit conducted by Highlight Motor Group is by use of highway through the state of Michigan, it is reasonable that the Highlight Motor Group's insurer, Old Republic General Insurance Group, had reason to foresee being hailed into a Michigan court. Khalaf v. Bankers & Shippers Ins. Co., 404 Mich. 134 (1976).

**ANSWER:**     Defendants make no answer to the averments of Paragraph 13 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

14.     Old Republic General Insurance Group of Canada, by insuring a corporation whose actions avail themselves of the motor vehicle laws and laws appertaining to insurance in the state of Michigan, act as sufficient "minimum contacts" in the state of Michigan such that the "maintenance of a suit does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985).

**ANSWER:**     Defendants make no answer to the averments of Paragraph 14 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or

denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

15.     By acting as an agent, and transacting business on behalf of Old Republic General Insurance Group of the United States and Canada, the co-defendants, Gallagher Bassett and Custard Insurance Adjusters, acted to avail themselves of the motor vehicle laws and laws appertaining to insurance in the state of Michigan, act as sufficient "minimum contacts" in the state of Michigan such that the "maintenance of a suit does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985).

**ANSWER:**     Defendants make no answer to the averments of Paragraph 15 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

16.     Per MCL 600.162l{b}, venue is proper, as none of the Defendants reside in, or have their principal place of business, in Genesee County, but Plaintiff's principal place of business is within Genesee County.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 16 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

17.     Per MCL 600.8301(1), this honorable court has exclusive jurisdiction over this matter, as the amount in controversy exceeds the statutory maximum.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 17 of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

## <u>General Allegations</u>

18.     Plaintiff shall incorporate herein, by reference, each allegation contained within this Complaint.

**ANSWER:**      By reference, defendants incorporate their Answers to Paragraphs 1 through 17 as their Answers to Paragraph 18 of plaintiff's Complaint.

19.      Plaintiff is in the environmental business, whereby they render emergency spill response and remediation services to both public and private entities.

**ANSWER:**      Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 19 of plaintiff's Complaint.

20.      Plaintiff is a preferred vendor to the Michigan Department of Transportation (MDOT) and the Michigan Department of Environment, Great Lakes, and Energy (EGLE), whereby they are required to meet certain standards in order to perform services on state highways.

**ANSWER:**      Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 20 of plaintiff's Complaint.

21.      On or about November 20, 2022, a vehicle owned by the Defendant, Highlight, whose Vehicle Identification Number is, to the best of Plaintiff's knowledge, 4V4NC9EH5KN904744, the license plate number of which was 1088PZ, and unit number of which is 1254, was involved in an accident on I-69 and Dort Highway in Flint, Michigan.

**ANSWER:**      Defendants admit the averments contained in Paragraph 21 of plaintiff's Complaint.

22.      Complete Towing of Flint, Michigan was dispatched for purposes of recovering and towing the vehicle by Genesee County Dispatch.

**ANSWER:**      Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 22 of plaintiff's Complaint.

23.      Owing to the fact that Highlight's vehicle was turned over on its side, the use of a heavy wrecker tow truck was necessitated.

**ANSWER:**      Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 23 of plaintiff's Complaint.

24.      When Complete Towing realized that Defendant, Highlight's truck had spilled fuel and other injurious substances along the highway, into a drain, and onto soil in the ditch/median area, Complete specified that Defendant, Highlight, should contact the Plaintiff for purposes of

remediation, because the road was shut down and clean up services were of immediate concern to reduce further damage.

**ANSWER:**   Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 24 of plaintiff's Complaint.

25.    Defendant, Highlight, then contacted Plaintiff for purposes of cleaning up the injurious substances which were the result of the accident involving Defendant, Highlight's truck.

**ANSWER:**   Defendants admit the averments contained in Paragraph 25 of plaintiff's

Complaint.

26.    Upon speaking with Plaintiff, Defendant represented that the accident was far less extensive in nature than what was reality.

**ANSWER:**   Defendants deny the averments contained in Paragraph 26 of plaintiff's

Complaint.

27.    Defendant then requested an estimated price for the incident based on the parameters in which Defendant described, for which Plaintiff responded by stating that price is hard to estimate based on not having eyes on the scene.

**ANSWER:**   Defendants deny the averments contained in Paragraph 27 of plaintiff's

Complaint.

28.    During the course of the conversation between Plaintiff and Defendant, Plaintiff was also contacted and dispatched by Genesee County Central Dispatch for purposes of assisting with the recovery and remediation being conducted by Complete Towing.

**ANSWER:**   Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 28 of plaintiff's Complaint.

29.    Upon arriving at the scene at approximately 9:30 a.m., Plaintiff observed an overturned semi-truck that had come to rest on top of a guardrail, with over one hundred (100) gallons of an oil-based substance spilled over a two hundred (200) yard area over the course of all lanes on the highway, as well as in an adjacent storm drain, and actively leaking into the grass and soil-based ditch/median on I-69.

**ANSWER:**   Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 29 of plaintiff's Complaint.

30.     Further, Plaintiff noticed that all lanes of the highway were closed by the proper authorities, owing to the fact that material from the truck, as well as the injurious substances that came from Defendant, Highlight's vehicle were spread throughout the road.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 30 of plaintiff's Complaint.

31.     Plaintiff first began by laying absorbent on the road, around the storm drain, and on the barrier between the cement and grass to stop the damage from continuing.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 31 of plaintiff's Complaint.

32.     Plaintiff then assisted Complete Towing in removing the guardrail that was damaged by Defendant, Highlight.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 32 of plaintiff's Complaint.

33.     At approximately 3 p.m., the tractor and trailer were up-righted, whereby Plaintiff could complete remediation efforts on the road, as well as vacuum out the fuel in the storm drain, so that the highway would pass inspection by the Michigan Department of Transportation's Liaison.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 33 of plaintiff's Complaint.

34.     At approximately 4:56 p.m., the highway was completely cleared of all injurious substances, owing to the fact that it is Plaintiff's duty to do so under Michigan Law, as well as remaining compliant with parameters set by the Michigan Department of Transportation (MDOT) and the Michigan Department of Environment, Great Lakes, and Energy (EGLE).

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 34 of plaintiff's Complaint.

35.     At which time, the Michigan Department of Transportation's Liaison authorized the road to be opened due to the fact that the road was now safe for highway travel.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 35 of plaintiff's Complaint.

36.     Before leaving the scene, Plaintiff and the Michigan Department of Transportation determined that the fuel that had made its way to the grassy area needed to be excavated, remediated, and replaced with clean dirt, as well as the necessity for reseeding and strawing in compliance with the Michigan Department of Transportation's requirements.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 36 of plaintiff's Complaint.

37.     On November 21, 2022, Plaintiff contacted Defendant and left a message.

**ANSWER:**     Defendants admit the averments contained in Paragraph 37 of plaintiff's Complaint.

38.     On November 23, 2022, Plaintiff contacted Defendant again to let them know that the job was much more extensive than what was originally presented, but it is Plaintiffs duty to return the accident scene to its original condition before Defendant, Highlight's accident.

**ANSWER:**     Defendants deny the averments contained in Paragraph 38 of plaintiff's Complaint.

39.     As such, Plaintiff explained to Defendant that excavation of the affected soil was necessary and that the job would cost around $85,000, including services already rendered.

**ANSWER:**     Defendants admit that plaintiff now sought $85,000.00 for the work allegedly performed and  lack sufficient knowledge to form a belief as to the truth of the remaining averments contained in Paragraph 39 of plaintiff's Complaint.

40.     Defendant specified that they would only pay $10,000, because this is what they were initially told would be the estimated cost of services rendered.

**ANSWER:**     Defendants admit the averments contained in Paragraph 40 of plaintiff's Complaint.

41.     Plaintiff then explained that the facts initially presented proved to be incorrect upon inspection, and thus the work necessary was more extensive.

**ANSWER:**     Defendants deny the averments contained in Paragraph 41 of plaintiff's Complaint.

42.      Defendant then offered to pay $20,000, to which Plaintiff did not concur.

**ANSWER:**   Defendants deny the averments contained in Paragraph 42 of plaintiff's

Complaint.

43.      Owing to the fact that there was an impasse, Defendant said that Plaintiff should go through their insurance company for purposes of payment.

**ANSWER:**   Defendants deny the averments contained in Paragraph 43 of plaintiff's

Complaint.

44.      After said conversation, Plaintiff researched the Federal Motor Carrier Safety Act's insurance reporting database, whereby they located Defendant, Highlight's general liability insurance carrier, which is listed as Defendant, Old Republic General Insurance Group.

**ANSWER:**   Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 44 of plaintiff's Complaint.

45.       On November 23, 2022, Plaintiff filed a claim with Defendant, Old Republic's third-party claim handler, Defendant, Gallagher Bassett, the policy number and claim number of which is respectively T70049 and 003032-004655-AP-0l.

**ANSWER:**   Defendants admit the averments contained in Paragraph 45 of plaintiff's

Complaint.

46.      On the same date, the claim handler Michael Davis, employed by Defendant, Gallagher Bassett, was assigned.

**ANSWER:**   Defendants admit the averments contained in Paragraph 46 of plaintiff's

Complaint.

47.      Plaintiff then contacted Michael Davis, to which he responded that he would not be the claim handler assigned, but instead would provide Plaintiff with the claim handler's information.

**ANSWER:**   Defendants admit the averments contained in Paragraph 47 of plaintiff's

Complaint.

48.     On November 28, 2023, Plaintiff arrived on scene for purposes of remediating the damage done to the ditch/median.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 48 of plaintiff's Complaint.

49.     On the same date, Plaintiff performed exaction services, straw matting, and reseeding for purposes of restoring the scene to its original condition.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 49 of plaintiff's Complaint.

50.     On November 30, 2022, owing to the fact that Plaintiff had not heard anything appertaining to the new claim handler assigned, Plaintiff then contacted Michael Davis, to which he did not respond, and Plaintiff then left a voicemail.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 50 of plaintiff's Complaint.

51.     On the same date, Plaintiff then emailed Michael Davis at Gallagher Bassett requesting the new claim handler's information.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 51 of plaintiff's Complaint.

52.     Michael Davis emailed Plaintiff asking them to send all information appertaining to the incident directly to his email.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 52 of plaintiff's Complaint.

53.     As such, Plaintiff then sent the invoice, which has been marked as Exhibit A, and accompanying documents to Michael Davis, via his email through Defendant, Gallagher Bassett.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 53 of plaintiff's Complaint.

54.     On December 19, 2022, owing to the fact that they had not heard anything since sending documents to Defendant, Gallagher Bassett, Plaintiff then called Michael Davis, to which Plaintiff was met with a voicemail stating that Michael Davis no longer worked for Defendant, Gallagher Bassett, and that inquiries should be made to David Gale.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 54 of plaintiff's Complaint.

55.     Plaintiff then called David Gale and left a voicemail seeking clarification on the status of the claim.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 55 of plaintiff's Complaint.

56.     Plaintiff then sent an email to David Gale's email through his Gallagher Bassett email address, seeking clarification on the claim.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 56 of plaintiff's Complaint.

57.     On December 27, 2022, Plaintiff received an email from David Gale stating that the invoice would be provided to the Defendant, Highlight.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 57 of plaintiff's Complaint.

58.     On the same date, Plaintiff responded to David Gale's email by stating that the invoice had already been presented to Defendant, Highlight, and that the insurance company's duty was to pay the invoice.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 58 of plaintiff's Complaint.

59.     On December 29, 2022, Plaintiff spoke to David Gale, who specified that the claim adjuster, Sean McDaniel, an employee of Defendant, Gallagher Bassett, was responsible for approving payment, and had directed Defendant, Highlight, to pay Plaintiff directly.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 59 of plaintiff's Complaint.

60.     On December 30, 2022, Plaintiff contacted Sean McDaniel and left him a voicemail message.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 60 of plaintiff's Complaint.

61.     On January 3, 2023, Plaintiff spoke to Sean McDaniel and asked when payment would be made to Plaintiff.

**ANSWER:**     Defendants deny the averments contained in Paragraph 61 of plaintiff's Complaint.

62.     Sean McDaniel responded by stating that David Gale was responsible for rendering payment to Plaintiff.

**ANSWER:**     Defendants deny the averments contained in Paragraph 62 of plaintiff's Complaint.

63.     On January 4, 2023, Plaintiff contacted David Gale, who specified that the claim had been turned over to another third-party adjuster, Defendant, Custard Insurance Adjusters.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 63 of plaintiff's Complaint.

64.     David Gale then presented Defendant, Custard's contact information.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 64 of plaintiff's Complaint.

65.     Plaintiff then emailed Defendant, Custard, asking for clarification on the claim.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 65 of plaintiff's Complaint.

66.     Plaintiff then received the claim handler, Tim King's contact information, by which Plaintiff then called and left a voicemail message.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 66 of plaintiff's Complaint.

67.     On January 6, 2023, Plaintiff sent all relevant information to Defendant, Custard.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 67 of plaintiff's Complaint.

68.     On January 12, 2023, Plaintiff called Tim King and left a voicemail message.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 68 of plaintiff's Complaint.

69.     On the same date, Plaintiff then emailed Tim King, via his email through Defendant, Custard, asking for clarification on the claim.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 69 of plaintiff's Complaint.

70.     On January 13, 2023, Plaintiff received a response from Tim King asking for certain clarifying materials.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 70 of plaintiff's Complaint.

71.     On January 16, 2023, Plaintiff sent all information requested by Tim King.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 71 of plaintiff's Complaint.

72.     On January 19, 2023, Plaintiff called Tim King and left a voicemail message.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 72 of plaintiff's Complaint.

73.     On January 23, 2023, Plaintiff called Tim King asking for clarification the status of the claim.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 73 of plaintiff's Complaint.

74.     On the same date, Tim King stated that Plaintiff "would have to be patient because he had forty (40) claims ahead of [Plaintiff's]."

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 74 of plaintiff's Complaint.

75.     Plaintiff then contacted Defendant, Custard's main line and requested the information for Tim King's supervisor.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 75 of plaintiff's Complaint.

76.     Upon receiving said information, Plaintiff contacted Tim King's supervisor, Ray Kimbrough, who apologized for the miscommunication, and stated that this claim would be handled tomorrow.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 76 of plaintiff's Complaint.

77.     On January 24, 2023, Plaintiff received an email from Ray Kimbrough asking for a report for the excavation conducted.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 77 of plaintiff's Complaint.

78.     On January 26, 2023, Plaintiff sent the excavation report to Ray Kimbrough.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 78 of plaintiff's Complaint.

79.     On February 13, 2023, Plaintiff called Ray Kimbrough for purposes of clarification on the status of the claim and left a voicemail.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 79 of plaintiff's Complaint.

80.     On January 1, 2023, Plaintiff received a phone call from Jade Hinga, a claim handler for Defendant, Gallagher Bassett, who apologized for the pace at which this claim had been handled and assured Plaintiff that she would have the claim resolved by Friday, March 3, 2023.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 80 of plaintiff's Complaint.

81.     On March 3, 2023, Plaintiff received a phone call from Jade Hinga offering $10,000 to settle the claim.

**ANSWER:**     Defendants admit the averments contained in Paragraph 81 of plaintiff's Complaint.

82.     Jade Hinga specified that this was the amount in which she was authorized to pay by Defendant, Highlight and that she could not go any higher than the amount allowed by Defendant, Highlight.

**ANSWER:**     Defendants admit the averments contained in Paragraph 82 of plaintiff's Complaint.

83.     Plaintiff expressed to Jade Hinga that this was unreasonable and asked whether this was the amount recommended by Defendant, Custard.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 83 of plaintiff's Complaint.

84.     Jade Hinga then stated that Defendant, Custard had yet to complete their audit of Plaintiff's invoice.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 84 of plaintiff's Complaint.

85.     Following this information, Plaintiff contacted Defendant, Old Republic Canada, and received the contact information of Tanya Schreck, the individual handling this claim.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 85 of plaintiff's Complaint.

86.     Upon receiving this information, Plaintiff contacted Tanya Schreck via phone and left a message.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 86 of plaintiff's Complaint.

87.    Plaintiff then received an email from Tanya Schreck asking for more information on the claim, to which Plaintiff provided.

**ANSWER:**    Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 87 of plaintiff's Complaint.

88.    On March 6, 2023, Plaintiff received an email from Tanya Schreck with the correct claim number and statement from her specifying that she would further look into this matter.

**ANSWER:**    Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 88 of plaintiff's Complaint.

89.    On the same date, Plaintiff sent all relevant documents to Defendant, Old Republic Canada.

**ANSWER:**    Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 89 of plaintiff's Complaint.

90.    Upon further inquiry, Plaintiff was told by Tanya Schreck that the documents had not been received and that she did not have an alternative email for purposes of receiving documents.

**ANSWER:**    Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 90 of plaintiff's Complaint.

91.    Plaintiff then worked diligently to re-send all documents and make certain that they were received.

**ANSWER:**    Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 91 of plaintiff's Complaint.

92.    On the same date, Plaintiff received a phone call from Jade Hinga at Defendant, Gallagher Bassett specifying that she was prepared to settle the claim for $25,000, because this was the amount allowed by Defendant, Highlight, and she further stated that she had not yet received a report from Defendant, Custard.

**ANSWER:**    Defendants deny the averments contained in Paragraph 92 of plaintiff's Complaint.

93.     Plaintiff countered the offer but stated to Jade Hinga that they were disappointed by her offer because it was not based on any reasonable due diligence conducted by Defendant, Gallagher Bassett.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 93 of plaintiff's Complaint.

94.     On March 16, 2023, Plaintiff emailed Tanya Schreck from Defendant, Old Republic Canada for purposes of clarifying when the claim would be settled.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 94 of plaintiff's Complaint.

95.     On the same date, Plaintiff received notice from Tanya Schreck that this claim was now being handled by Defendant, Highlight's attorney Michael Franz.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 95 of plaintiff's Complaint.

96.     On March 16, 2023, Plaintiff emailed Tanya Schreck asking if Michael Franz represented all the Defendants or just Defendant, Highlight.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 96 of plaintiff's Complaint.

97.     On the same date, Plaintiff received a response from Michael Franz specifying that he only represented Defendant, Highlight and not any other entity.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 97 of plaintiff's Complaint.

98.     At which time, Defendants, Old Republic United States, Old Republic Canada, Gallagher Bassett, Custard ceased all communication with Plaintiff for purposes of settling the claim in question.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 98 of plaintiff's Complaint.

99.     As of the date of filing, no Defendant named in this complaint has paid any amount to the Plaintiff for purposes of settling the claim.

**ANSWER:**   Defendants admit the averments contained in Paragraph 99 of plaintiff's Complaint.

## **Count I – Breach of Contract**

100.   Per MCR 2.113(C)(l)(b), it is not necessary that Plaintiff attach a copy of Defendant, Highlight's insurance policy, but makes reference to the fact that there exists a policy based on the fact that the Federal Motor Carrier Act's (FMCSA) Liability Insurance Database lists that Defendant, Highlight has a current policy through Old Republic Insurance Company, as demonstrated in Exhibit B, which meets the minimum requirements outlined in Michigan and by the FMCSA.

**ANSWER:**   Defendants make no answer to the averments of Paragraph 100, Count I, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

101.   Under MCL 500.3121(1), "an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle subject to the provisions of this section."

**ANSWER:**   Defendants make no answer to the averments of Paragraph 101, Count I, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

102.   Under MCL 500.3121(3), "damage to tangible property consists of physical injury to or destruction of the property and loss of use of the property so injured or destroyed."

**ANSWER:**   Defendants make no answer to the averments of Paragraph 102, Count I, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

103. Further, the Federal Motor Carrier Act specifies under Section 387.9, that the minimum amount of liability coverage required for an interstate commercial vehicle is seven hundred and fifty thousand dollars ($750,000) for each incident involving damage to a person or tangible property.

**ANSWER:** Defendants make no answer to the averments of Paragraph 103, Count I, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

104. In this case, the Defendant, Highlight is insured by Old Republic Insurance in the amount of one million dollars ($1,000,000) per incident involving damage to a person or property.

**ANSWER:** Defendants admit the averments contained in Paragraph 104, Count I, of plaintiff's Complaint.

105. Defendant, Highlight is considered an interstate commercial carrier, and thus, their vehicles are deemed interstate commercial vehicles.

**ANSWER:** Defendants admit the averments contained in Paragraph 105, Count I, of plaintiff's Complaint.

106. Defendant, Highlight flipped their vehicle, causing a spill of a substantial amount of oil-based fluid, thus damaging tangible property in the form of the roadway, the storm drain, and the adjacent grassy ditch/median, thus qualifying as damage covered under MCL 500.3121(1) and the Code of Regulations FMCSA Section 387.9.

**ANSWER:** Defendants make no answer to the averments of Paragraph 106, Count I, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

107. By not paying the reasonable costs associated with the spill incident, and placing the impetus of payment on Defendant, Highlight through the use of Defendant, Highlight's counsel, Defendant's Old Republic United States, Old Republic Canada, Gallagher Bassett, and Custard are in breach of their insurance contract to pay for all damage to tangible property.

**ANSWER:** Defendants deny the averments contained in Paragraph 107, Count I, of plaintiff's Complaint.

WHEREFORE, Defendants, HL Motor Group, Inc., Old Republic Insurance Company of Canada, incorrectly named as Old Republic General Insurance Group of Canada, Inc., Old Republic International incorrectly named as Old Republic General Insurance Group of The United States, Gallagher Bassett and Custard Insurance Adjusters, Inc., deny that they are liable to the plaintiff in any amount whatsoever, and prays that judgment be entered in their favor, and against plaintiff, on Count I of plaintiff's Complaint, and awarding their costs incurred in defending this action.

## Count II – Breach of Contract

108.    As stated in Contship Containerlines Inc. v. Howard Indus., Inc., "There are two kinds of implied contracts: one implied in fact and the other implied in law. The first does not exist, unless the minds of the parties meet, by reason of words or conduct. The second is quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended." Contship Containerlines, Inc. v. Howard Indus., Inc., 309 F.3d 910 (6th Cir. 2002); Murray Hill Publ'ns., Inc. v. ABC Commc'ns, Inc., 264 F.3d 622 (6th Cir. 2001).

**ANSWER:** Defendants make no answer to the averments of Paragraph 108, Count II, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

109.    Further, "[A] contract implied in law is quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law to enable justice to be accomplished, even in case no contract was intended" between the parties. Moll v. Wayne County et al., 50 N.W.2d 881 (1952); Cascaden v. Magryta, 225 N.W. 511. (1929).

**ANSWER:** Defendants make no answer to the averments of Paragraph 109, Count II, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be

admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

110.     With an implied-in-law contract, the court conclusively implies an intent to pay for services in order to prevent unjust enrichment. In re Estate of Morris, 484 N.W.2d 755 (1992); Roznowski v. Bozyk, 251 N.W.2d 606 (1977).

**ANSWER:**     Defendants make no answer to the averments of Paragraph 110, Count II, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

111.     Further, according to MCL 257.676c(3), if law enforcement determines that a vehicle involved in an accident is creating a road or safety hazard, and that services must be rendered in a timely manner, the law enforcement agency has authority to select the towing, recovery, and/or remediation service to respond to the accident.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 111, Count II, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

112.     Under MCL 257.618a(7), "The owner or carrier, if any, of a motor vehicle, cargo, or personal property removed or disposed of under subsection (5) shall reimburse the public agency, departments, street railway, and towing companies, if any, for all documented reasonable costs incurred in that removal and disposal."

**ANSWER:**     Defendants make no answer to the averments of Paragraph 112, Count II, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

113.     In this case, the necessary contracting parties are Plaintiff and Genesee County, as Plaintiff is engaged in a business that is necessary to public health and safety.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 113, Count II, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

114.     In compliance with the contract between Plaintiff and Genesee County, Plaintiff rendered remediation services in conjunction with Complete Towing for purposes of clearing the roadway and adjacent ditch/median.

**ANSWER:**     Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 114, Count II, of plaintiff's Complaint.

115.     As such, in order to enable justice and preclude unjust enrichment, a contractual relationship implied in law was created between Plaintiff, Genesee County, and Defendant.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 115, Count II, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

116.     As such, because this contract is implied in law, payment for services rendered is necessary to prevent unjust enrichment.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 116, Count II, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

117.     Further, due to the fact that Plaintiff worked in conjunction with Complete Towing, who was dispatched by Genesee County Dispatch, as well as being dispatched by the same, there was no necessity for a contract to be entered between Plaintiff and Defendant.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 117, Count II, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be

admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

118.    As is present here, because the law enforcement agency overseeing the scene of this accident determined the scene to be creating a road or safety hazard, the law enforcement agency had the authority to choose a towing, recovery, and remediation service that could respond expeditiously. MCL 257.676c(3).

**ANSWER:**    Defendants lack sufficient knowledge to form a belief as to the truth of the averments contained in Paragraph 118, Count II, of plaintiff's Complaint.

119.    As such, Defendant is compelled to pay all reasonable costs associated with the remediation. MCL 257.618a(7).

**ANSWER:**    Defendants deny the averments contained in Paragraph 119, Count II, of plaintiff's Complaint.

120.    Based on Defendant's refusal to pay for reasonable costs associated with the recovery, Defendants is in breach of contract.

**ANSWER:**    Defendants deny the averments contained in Paragraph 120, Count II, of plaintiff's Complaint.

WHEREFORE, Defendants, HL Motor Group, Inc., Old Republic Insurance Company of Canada, incorrectly named as Old Republic General Insurance Group of Canada, Inc., Old Republic International incorrectly named as Old Republic General Insurance Group of The United States, Gallagher Bassett and Custard Insurance Adjusters, Inc., deny that they are liable to the plaintiff in any amount whatsoever, and prays that judgment be entered in their favor, and against plaintiff, on Count II of plaintiff's Complaint, and awarding their costs incurred in defending this action.

## Count III – Bad Faith

121.    Under MCL 500.4503(c), "a fraudulent insurance act includes, but is not limited to, acts or omissions committed by any person who knowingly, and with an intent to injure, defraud, or deceive: (c) Presents or causes to be presented to or by any insurer, any oral or written statement including computer-generated information as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains false information concerning any fact or thing material to the claim."

**ANSWER:**    Defendants make no answer to the averments of Paragraph 121, Count III,

of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be

admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants

deny the same.

122.    Under MCL 500.2006(1), "A person [insurer] must pay on a timely basis to its insured, a person directly entitled to benefits under its insured's insurance contract, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, a person directly entitled to benefits under its insured's insurance contract, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute."

**ANSWER:**    Defendants make no answer to the averments of Paragraph 122, Count III,

of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be

admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants

deny the same.

123.    Further, under MCL 500.2006(4) "If benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract. If the claimant is a third-party tort claimant, the benefits paid bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith, and the bad faith was determined by a court of law."

**ANSWER:**    Defendants make no answer to the averments of Paragraph 123, Count III,

of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be

admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants

deny the same.

124.     According to Commercial Union Ins. Co. v. Liberty Mut. Ins. Co., 393 N.W.2d
161, (1986), the factfinder in a case may take into account any act any and all evidence that tends
to show actions in bad faith by an insurance provider.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 124, Count III,

of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be

admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants

deny the same.

125.     According to the same, it is considered a bad faith insurance act for an insurance
provider to fail to make a proper investigation of the claim prior to refusing an offer of settlement
within the policy limits. Id.

**ANSWER:**     Defendants make no answer to the averments of Paragraph 125, Count III,

of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be

admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants

deny the same.

126.     In the state of Michigan, "the test for a principal-agent relationship is whether the
principal has the right to control the agent." Avery v. American Honda Motor Car Co., 327 N.W.2d
447 (1982).

**ANSWER:**     Defendants make no answer to the averments of Paragraph 126, Count III,

of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be

admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants

deny the same.

127.     Generally speaking, "a principal is responsible for the acts of its agents." Caldwell
v. Cleveland-Cliffs Iron Co., 315 N.W.2d 186 (1981).

**ANSWER:**     Defendants make no answer to the averments of Paragraph 127, Count III,

of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be

admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants

deny the same.

128.    In this case, upon filing of the claim, Plaintiff was not reasonably informed by Defendant, Gallagher Bassett of the departure of the original claim handler, thus qualifying as an act of bad faith in undue delay and failure to keep a claimant reasonably informed.

**ANSWER:**    Defendants deny the averments contained in Paragraph 128, Count III, of

plaintiff's Complaint.

129.    Further, upon transfer of claim handlers, David Gale specified that Sean McDaniel was to make the final determination for purposes of payment and that Sean McDaniel had instructed Defendant, Highlight to pay Plaintiff directly.

**ANSWER:**    Defendants lack sufficient knowledge to form a belief as to the truth of the

averments contained in Paragraph 129, Count III, of plaintiff's Complaint.

130.    Based on the fact that it was not Defendant, Highlight's duty to pay Plaintiff directly, Defendant, Gallagher Bassett acted in bad faith for purposes of misinforming their insured, as well as the Plaintiff, as to who had responsibility for purposes of payment.

**ANSWER:**    Defendants deny the averments contained in Paragraph 130, Count III, of

plaintiff's Complaint.

131.    Upon receiving information that Sean McDaniel was not to make the final decision for purposes of payment, Plaintiff was informed by David Gale, nearly a month after providing all documentation, that Defendant, Gallagher Bassett, a third-party adjuster, had hired Defendant, Custard, another third-party to review the claim, thus acting in bad faith by unduly delaying the claim process.

**ANSWER:**    Defendants deny the averments contained in Paragraph 131, Count III, of

plaintiff's Complaint.

132.    When the claim was turned over to Defendant, Custard, they failed to render a review of documents provided by Plaintiff within two months, thus further acting in bad faith by unduly delaying the claim process.

**ANSWER:**    Defendants deny the averments contained in Paragraph 132, Count III, of

plaintiff's Complaint.

133. Without having properly assessed any documentation provided by Plaintiff, Jade Hinga, an employee of Defendant, Gallagher Bassett made two (2) settlement offers, after failing to reasonably investigate the claim, that were not based on what reasonable costs for like services, but based on what Defendant, Highlight, believed were reasonable costs, thus violating MCL 500.4503(c) by making statements as to claim settlement that are not based on the compensation of reasonable costs offer mediation under MCL 500.3121(1).

**ANSWER:** Defendants deny the averments contained in Paragraph 133, Count III, of plaintiff's Complaint.

134. After Plaintiff made inquiry to Defendant, Old Republic Canada, Old Republic Canada refused to converse further appertaining to the claim and turned the claim over to Defendant, Highlight's counsel, thus acting in bad faith in refusing to settle claims on behalf of their insured.

**ANSWER:** Defendants deny the averments contained in Paragraph 134, Count III, of plaintiff's Complaint.

135. Under MCL 500.2006(4), because claims were not settled within the sixty (6) day limit, Defendants must pay ten (10) months of interest at ten percent (10%), which amounts to $8,444 in additional damages.

**ANSWER:** Defendants make no answer to the averments of Paragraph 135, Count III, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

136. Finally, based on the fact that Defendants, Old Republic United States and Old Republic Canada are the insurers of Defendant, Highlight, and said insurers hired Defendants, Gallagher Bassett and Custard to perform claim services on their behalf, thus controlling their authority to settle the claim, a sufficient principal-agent relationship has been established for purposes of establishing vicarious liability.

**ANSWER:** Defendants make no answer to the averments of Paragraph 136, Count III, of plaintiff's Complaint, since it states conclusions of law rather than averments of fact that can be admitted or denied. To the extent those conclusions are deemed to be averments of fact, defendants deny the same.

WHEREFORE, Defendants, HL Motor Group, Inc., Old Republic Insurance Company of Canada, incorrectly named as Old Republic General Insurance Group of Canada, Inc., Old Republic International incorrectly named as Old Republic General Insurance Group of The United States, Gallagher Bassett and Custard Insurance Adjusters, Inc., deny that they are liable to the plaintiff in any amount whatsoever, and prays that judgment be entered in their favor, and against plaintiff, on Count III of plaintiff's Complaint, and awarding their costs incurred in defending this action.

## **Affirmative Defenses**

For their Affirmative Defenses to Plaintiff's Complaint, Defendants, HL Motor Group, Inc., Old Republic Insurance Company of Canada, incorrectly named as Old Republic General Insurance Group of Canada, Inc., Old Republic International incorrectly named as Old Republic General Insurance Group of The United States, Gallagher Bassett and Custard Insurance Adjusters, Inc., state as follows:

1.     Plaintiff's claims are barred due to the lack and failure of consideration.

2.     Plaintiff's claims are barred because plaintiff failed to properly allege a claim upon which relief can be granted.

3.     Plaintiff's claims are barred because it did not perform all obligations required of it in the alleged contract.

4.     Plaintiff's claims are barred by the doctrine of unclean hands.

5.     Plaintiff's claims are barred because it fraudulently invoiced defendant for services that were never performed by plaintiff.

6.      Plaintiff's claims are barred because it never obtained assent from defendant for its scope of work and costs to exceed that originally agreed to by the entities that engaged plaintiff's services.

7.      Defendants reserve the right to submit additional and/or supplemental affirmative defenses to this action which may become known to defendants during the course of investigation, discovery and/or trial of this matter.

WHEREFORE, Defendants, HL Motor Group, Inc., Old Republic Insurance Company of Canada, incorrectly named as Old Republic General Insurance Group of Canada, Inc., Old Republic International incorrectly named as Old Republic General Insurance Group of The United States, Gallagher Bassett and Custard Insurance Adjusters, Inc., request that judgment be entered in their favor and against the plaintiff on their Affirmative Defenses or, in the alternative, that plaintiff's causes of action be barred and/or that the plaintiff's damages be reduced accordingly.

Respectfully submitted,

By:/s/ *Michael T. Franz*
       One of Defendants' Attorneys

Michael T. Franz, P84079
Lewis Brisbois Bisgaard & Smith LLP
550 West Adams Street
Suite 300
Chicago, Illinois 60661
Michael.Franz@lewisbrisbois.com
(312) 463-3329 Phone
(312) 345-1776 Facsimile

Date: December 24, 2023

*Attorneys for Defendants*

75944-54

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHIGAN SPILL RESPONSE d/b/a | ) | |
| METRO TOWING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: |
| | ) | |
| HL MOTOR GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **AFFIDAVIT OF INSUFFICINET KNOWLEDGE**

Under penalties as provided by law, being first duly sworn on oath, depose and state that I am a member of the firm of Lewis Brisbois Bisgaard & Smith LLP, attorneys for defendants herein, and further, that I have read the foregoing Defendants' Answer to Plaintiff's Complaint and the statements therein, including those regarding insufficient knowledge, and that said statements are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Michael T. Franz, P84079          By: /s/ *Michael T. Franz*
Lewis Brisbois Bisgaard & Smith LLP          One of Defendants' Attorneys
550 West Adams Street
Suite 300
Chicago, Illinois 60661
Michael.Franz@lewisbrisbois.com
(312) 463-3329 Phone
(312) 345-1776 Facsimile

Date: December 24, 2023

*Attorneys for Defendants*

75944-54

**<u>Certificate of Service</u>**

I hereby certify that I caused the above Answer and Affirmative Defenses to be electronically filed via the Court's Electronic Filing System and that a true and correct copy will be served electronically to all attorney(s) of record.

/s/ *Michael T. Franz*