UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN SPILL RESPONSE,

               Plaintiff,                            Case No. 2:23-cv-13144

v.                                          Honorable Susan K. DeClercq
                                              United States District Judge

HIGHLIGHT MOTOR GROUP, et al.,

               Defendants.

_____/

**OPINION AND ORDER GRANTING INSURER DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 21; 22; 23)**

In November 2022, a truck transporting fuel was involved in an accident on Interstate 69 in Flint, Michigan. Much of the fuel from the truck—owned by Highlight Motor Group ("Highlight")—spilled onto land owned by the State of Michigan. So Highlight contacted Michigan Spill Response (MSR) to clean and remediate the fuel spill.

MSR accepted the job, cleaned up the spill in compliance with applicable state regulations, and then invoiced Highlight Motor Group for $85,000.00. Highlight and its insurer, Old Republic General Insurance Group of Canada ("Old Republic"), refused to pay that amount, insisting that the initial estimate MSR provided was only $10,000.00.

One year later, MSR still had not been paid, so it sued Highlight and Old Republic. MSR also named as defendants the insurance claim adjusters that subsequently reviewed MSR's claim for payment, Gallagher Bassett and Custard Insurance Adjusters ("Custard").

Now, after the close of discovery, Old Republic, Gallagher Basset, and Custard (collectively "the Insurer Defendants") seek summary judgment. As explained below, their motions will be granted.

## I. BACKGROUND

The facts giving rise to this case are straightforward and not disputed by any of the Insurer Defendants.[1]

MSR is a Michigan corporation with its principal place of business in Flint, Michigan. ECF No. 1-1 at PageID.6. MSR provides, among other services, emergency response services related to chemical spills. ECF No. 24-5 at PageID.311.

On November 20, 2025, a Highlight truck was involved in a single-vehicle accident on Interstate 69 that caused the "saddle tank" to rollover and spill a

---

[1] Indeed, when reciting the facts in their motions for summary judgment, all three Insurer Defendants cite exclusively to the Plaintiff's version of events in its complaint. *See, e.g.*, ECF Nos. 21 at PageID.97 (citing ECF No. 1-1); 22 at PageID.126 (same); 23 at PageID.153 (same).

significant amount of diesel fuel onto the highway and surrounding land. ECF No. 24-5 at PageID.318, 322–23.

At the time, the owner of Highlight was Niron Jeallel. *See* ECF No. 24-5 at PageID.319–20. Shortly after the spill, Jeallel called MSR and requested its cleanup services. ECF No. 24-5 at PageID.321–22. Jeallel informed MSR that he believed the spill involved about 50 gallons of diesel fuel. *Id.* at PageID.327. So Donald Simota, the MSR employee who answered Jeallel's call that day, told him that the cost would be about "five to ten grand." ECF No. 24-5 at PageID.324. Simota recalled sending Highlight an authorization form to complete and sign but he did not remember if it was returned signed. *Id.* at PageID.325–26.

When Simota and six other MSR employees arrived at the scene, the amount of oil spilled appeared to be much more than the 50 gallons Jeallel had initially told Simota. *See id.* at PageID.333, 336, 339. After MSR began cleaning up the fuel spill, Michigan Department of Transportation employees directed MSR to perform additional tasks to comply with state regulations. *Id.* at PageID.329, 350. To that end, MSR fixed a fence that had been knocked down during the accident, remediated the soil, put straw down, and "clean[ed] up" the damaged guardrail. *Id.*; *see also id.* at PageID.334 (detailing how MSR performed cleanup and remediation work). In total, Simota estimates MSR performed about 8 to 10 hours of work cleaning up the spill. *Id.* at PageID.334.

A few days later, MSR sent Highlight an invoice for $85,000. ECF No. 1-1 at PageID.11 But Highlight responded that they would only pay $10,000, because that was the original estimate that Simota had offered. *Id.* MSR explained that Simota's estimate was made based upon the "incorrect" information Jeallel had provided Simota over the phone. *Id.* So Highlight then offered to pay $20,000, which MSR refused. *Id.* At that point, Highlight told MSR to submit a claim for payment to Highlight's insurer, Old Republic, which MSR did. *Id.* at PageID.11–12.

After Old Republic received the claim, Old Republic assigned MSR's claim to the Illinois-based entity Gallagher Basset to "investigate [the] claim to its conclusion." ECF No. 24-6 at PageID.368–69. To that end, Old Republic fully authorized Gallagher Basset to settle MSR's claim for up to $100,000. ECF No. 24-3 at PageID.260. Gallagher Basset, in turn, hired another third party—Custard—to perform an audit of all evidence submitted that related to MSR's claim. *Id.* at PageID.256–57.

In March 2023, while Gallagher Basset was awaiting the audit report form Custard, Gallagher Basset offered MSR $25,000 to settle the claim, but MSR rejected the officer. *Id.* at PageID.250, 252.

In November 2023, MSR still had not received payment for the services it provided to Highlight, so it filed this lawsuit alleging two counts of breach of contract and one count of "bad faith" against Highlight, Old Republic, Gallagher

Basset, and Custard. *See* ECF No. 1-1. The lawsuit was originally filed in Genesee County Circuit Court but was removed to federal court in December 2023. ECF No. 1.

A few days after the case was removed to this Court, Custard submitted a report regarding MSR's claim, recommending an "environmental settlement amount" between $35,000 and $45,000. ECF No. 24-4 at PageID.285. This Court is not aware of any subsequent settlement offers made after this lawsuit was filed.

In early 2025, after the close of discovery, Old Republic, Gallagher Bassett, and Custard (collectively the "Insurer Defendants") all filed motions for summary judgment.[2] ECF Nos. 21; 22; 23. Michigan Spill Response responded to each motion, *see* ECF Nos. 24; 29; 32. No replies were filed by the Insurer Defendants. A hearing is not necessary to resolve the motion. *See* E.D. Mich. LR 7.1(f)(2).

## II. LEGAL STANDARD

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). If the movant makes such a showing, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which

---

[2] Highlight Motor Group did not file a motion for summary judgment.

requires more than a mere "scintilla of evidence," *id.* at 252, and more than "metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party "must prevail as a matter of law." *See Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

Because all three motions for summary judgment make the same arguments, they will be addressed together. *See* ECF Nos. 21; 22; 23. The three Insurer Defendants argue that (1) any contract claims against them must be dismissed because MSR did not have a contract with any Insurer Defendant and (2) MSR's bad faith claims against them must be dismissed because MSR is not the insured party and thereby does not have standing to bring such a claim. *See* ECF Nos. 21; 22; 23.

### A. MSR's breach of contract claims against the Insurer Defendants (Counts I and II)

Both Counts I and II allege breaches of contract. Count I alleges that the Insurer Defendants "are in breach of their insurance contract to pay for all damage to tangible property." ECF No. 1-1 at PageID.18. Count II alleges that the Insurer Defendants breached a contract implied in law by failing to pay MSR for its services. *Id.* at PageID.18–20.

Count I will be dismissed as to the Insurer Defendants because it alleges contract claims based on a contract between the Insurer Defendants and Highlight.

MSR is not a party to these contracts,[3] and thus does not have standing to bring a breach of contract claim. Indeed, Michigan law "presumes that a contract has been executed for the benefit of the contracting parties, and the mere fact that a third person would incidentally benefit does not give the third person a right to sue for the breach of contract." *Schmalfeldt v. N. Pointe Ins. Co.*, 652 N.W.2d 683, 686 (Mich. Ct. App. 2002), *aff'd on other grounds*, 670 N.W.2d 651 (Mich. 2003) (internal citations omitted).

---

[3] MSR does not appear to make a third-party-beneficiary argument. But, to the extent that MSR's claims that the Insurer Defendants breached a contractual duty to MSR might rest on such a theory, Michigan law is clear that such a theory will not succeed. Indeed, Michigan's third-party beneficiary statute "reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has 'undertaken to give or to do or refrain from doing something directly to or for said person.'" *Brunsell v. City of Zeeland*, 651 N.W.2d 388, 390 (Mich. 2002) (quoting Mich. Comp. Laws § 600.1405(1)). And courts applying Michigan law have concluded that third parties seeking to file a claim under an insurance contract between an insurer and insured are *not* third-party beneficiaries. *See Schmalfeldt v. North Pointe Ins. Co.*, 670 N.W.2d 651 (Mich. 2003) (finding that plaintiff injured at a bar was not a third-party beneficiary to insurance contract between the bar and its insurer); *Sole Const., Inc. v. Chicago Title Ins. Co.*, No. 10-CV-11879, 2010 WL 5676522, at *3–4 (E.D. Mich. Dec. 6, 2010), report and recommendation adopted, No. 10-CV-11879-DT, 2011 WL 333952 (E.D. Mich. Jan. 31, 2011) (noting that an insurance policy that makes "direct promises only to its insured" does not suggest that the insurer "intended to provide benefits to third parties," thus holding that a third-party claimant seeking insurance proceeds is not a third-party beneficiary to such an insurance contract). In sum, MSR's claims would fail under a third-party beneficiary theory as well.

Count II will also be dismissed because, as explained below, Plaintiff has not established that there was a contract—implied in law or in fact—between Plaintiff and any of the Insurer Defendants.

### 1. Law

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Mich. v State of Michigan*, 866 N.W.2d 782, 804 (Mich. 2015) (citing *Hammel v. Foor*, 102 N.W.2d 196, 200 (Mich. 1960)). And "the party claiming a breach of contract is required to prove the '*terms*' of the contract that the defendant allegedly breached." *Simmons v. N. Mich. Univ. Bd. of Trs.*, No. 358204, 2024 WL 4982706, at *2 (Mich. Ct. App. Dec. 4, 2024) (citing *Van Buren Charter Twp. v Visteon Corp.*, 904 N.W.2d 192, 202 (Mich. Ct. App. 2017)).

### 2. Application

MSR admits there is not an express contract between it and any of the Insurer Defendants. *See* ECF Nos. 24 at PageID.210; 29 at PageID.406; 32 at PageID.610. Instead, MSR asserts the Insurer Defendants had *implied contracts* with MSR because the insurers were obligated to pay. *See* ECF Nos. 24 at PageID.210; 29 at

- 8 -

PageID.406; 32 at PageID.610. But the Insurer Defendants argue that there is no testimony or other discovery sufficient to support MSR's contention that there was an implied contract. ECF Nos. 21 at PageID.99; 22 at PageID.128; 23 at PageID.155. Thus, according to the Insurer Defendants, MSR's breach of contract claims must fail at the first step because there was no contract.

"There are two kinds of implied contracts: One implied in fact, and the other implied in law." *City of Highland Park v. State Land Bank Auth.*, 986 N.W.2d 638, 646 (Mich. Ct. App. 2022) (quoting *Detroit v. Highland Park*, 39 N.W.2d 325, 333–34 (Mich. 1949) (quotation marks and citation omitted).

"[A]n implied-in-fact contract requires mutual assent just like any other contract." *Allen v. Michigan State Univ.*, No. 358135, 2024 WL 4982523, at *9 (Mich. Ct. App. Dec. 4, 2024) (citing *McInerney v. Detroit Tr. Co.*, 271 N.W. 545, 548 (Mich. 1947). But, unlike express contracts, such assent may be "inferred from the parties' words and actions since the parties did not directly express their mutual assent and intent to contract." *Id.* (citing *Erickson v. Goodell Oil Co.*, 180 N.W.2d 798, 800 (Mich. 1970)).

In contrast, an implied-in-law contract does *not* require mutual assent. *See Olance v. TAC Worldwide Cos.*, No. 308285, 2013 WL 1501015, at *5 (Mich. Ct. App. Apr. 11, 2013) (citing *Detroit v. Highland Park,* 39 N.W.2d at 334). Indeed, "[a]n implied-in-law contract is a legal fiction 'to enable justice [to] be

accomplished' even if there was no meeting of the minds and no contract was intended." *AFT Mich. v. Michigan*, 846 N.W.2d 583, 590 (Mich. Ct. App. 2014), (quoting *Detroit v. Highland Park,* 39 N.W.2d at 334), *aff'd sub nom. AFT Mich. v. State of Michigan*, 866 N.W.2d 782 (Mich. 2015)). To succeed on "a claim that a contract should be implied in law to prevent unjust enrichment, a plaintiff must show: '(1) receipt of a benefit by the defendant from the plaintiff,'" and (2) that it would be inequitable for the defendant to retain that benefit. *Allen*, 2024 WL 4982523, at *9 (quoting *Dumas v Auto Club Ins Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991)).

MSR asserts that here it can show it had contracts with the Insurer Defendants through the implied-in-law contract framework. *See* ECF Nos. 24 at PageID.210; 29 at PageID.406; 32 at PageID.610. But there is no evidence in the record that any of the Insurer Defendants received a benefit from MSR such that a contract should be implied in law.

MSR asserts that the Insurer Defendants "enjoyed substantial benefit in not paying for the reasonable costs associated with the accident caused by their insured." ECF Nos. 24 at PageID.212; 29 at PageID.408; 32 at PageID.612. But MSR does not allege that the Insurer Defendants received a benefit *from MSR* sufficient to show that there was a contract implied in law between MSR and any of the three Insurer Defendants. True, MSR provided a benefit: its cleanup services. But it provided that

benefit to *Highlight* and provided no such benefit to the Insurer Defendants. Further, any contractual obligation of the Insurer Defendants to pay either Highlight or MSR did not arise because MSR provided a benefit to the *Insurer Defendants*. It arose because MSR provided a benefit to *Highlight*. Thus, this is not a circumstance under which a contract may be implied in law.

In sum, there is no evidence that suggests that MSR had an implied contract with any of the Insurer Defendants. Thus, their breach of contract claims against the Insured Defendants will be dismissed.

### B. MSR's bad faith claims against the Insurer Defendants (Count III)

In Count III, MSR alleges "bad faith" by the Insurer Defendants and cites to several sections of Michigan's Insurance Code of 1956, Mich. Comp. Laws § 500.100 *et seq*. ECF No. 1-1 at PageID.20–23. In this way, the legal basis on which MSR is attempting to base Count III was not entirely clear from MSR's complaint alone. But—as this Court understands MSR's complaint and responses—it appears MSR is alleging that the Insurer Defendants acted in bad faith by (1) committing fraudulent insurance acts, as defined by Mich. Comp. Laws § 500.4503; (2); refusing to settle MSR's claim; and (3) failing to timely pay MSR's insurance claim according to Mich. Comp. Laws § 500.2006. *See* ECF Nos. 1-1; 24; 29; 32. Specifically, MSR alleges the following acts of bad faith by the Insurer Defendants in its complaint:

1. Defendant Gallagher Bassett's failure to "reasonably inform" Plaintiff "of the departure of the original claim handler." ECF No. 1-1 at PageID.22.

2. Defendant Gallagher Bassett's alleged statement to "their insured, as well as the Plaintiff, as to who had responsibility for purposes of payment." *Id.*

3. Defendant Gallagher Bassett's undue delay in the claim process caused by its hiring of Defendant Custard to review the claim. *Id.*

4. Defendant Custard's undue delay of the claim process, including failing to review documents provided by MSR. *Id.*

5. Defendant Gallagher Bassett's two settlement offers after failing to reasonably investigate MSR's claim. MSR asserts these settlement offers were based solely on what Highlight "believed were reasonable costs," and that by taking Highlight at its word and not conducting further investigation, Defendant Gallagher Bassett violated Mich. Comp. Laws § 500.4503(c). *Id.*

6. Defendant Old Republic's refusal "to converse further appertaining to the claim" and decision to then "turn[] the claim over to Defendant, Highlight's Counsel, thus acting in bad faith in refusing to settle claims on behalf of their insured." *Id.* at PageID.23.

**1. Fraudulent Insurance Acts (Mich. Comp. Laws § 500.4503)**

MSR's claim that the Insurer Defendants acted in bad faith by committing fraudulent insurance acts prohibited by Michigan law must be dismissed. Although Michigan law establishes nine categories of fraudulent insurance acts, *see* Mich. Comp. Laws § 500.4503, there is no private right of action for a claim of insurance fraud under that chapter. *See State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *2 (E.D. Mich. Feb. 12, 2013), *on*

- 12 -

*reconsideration*, No. 12-11500, 2013 WL 3777108 (E.D. Mich. May 22, 2013). True, "[a] person who commits a fraudulent insurance act under section 4503 is guilty of a felony." Mich. Comp. Laws § 500.4511. But that alone does not provide the basis for a private right of action. In sum, Count III will be dismissed as to the Insurer Defendants to the extent MSR is relying on Mich. Comp. Laws § 500.4503 as an independent basis for a cause of action.[4]

### 2. Refusal to Settle MSR's Claim

MSR's attempt to assert an independent cause of action against the Insurer Defendants for bad faith refusal to settle MSR's insurance claim against Highlight also must be dismissed. Although the allegation of bad faith refusal to settle a claim alone might be a tort claim available to the *insured* (when the insurance company refuses to settle a third-party claim against the insured which then exposes the *insured* to excess liability), it is not a claim available to MSR here. *See Young v. Mich. Mut. Ins. Co.,* 362 N.W.2d 844, 847 n. 1 (Mich. Ct. App. 1984) (citing *Com. Union Ins. Co. v. Med. Protective Co.*, 356 N.W.2d 648, 650 (Mich. Ct. App. 1984), *aff'd in part and remanded*, 393 N.W.2d 479 (Mich. 1986)). Indeed, MSR is not the

---

[4] This Court notes that the existence of Mich. Comp. Laws §§ 500.4503–11 does not foreclose a common law fraud claim. But MSR did not bring a common law fraud claim against any of the Insurer Defendants. *See* ECF No. 1-1. *See State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *2 (E.D. Mich. Feb. 12, 2013), *on reconsideration*, No. 12-11500, 2013 WL 3777108 (E.D. Mich. May 22, 2013).

insured, but a third party who filed a claim against Highlight. So, "even if the insurers acted in bad faith, only the insured"—which is Highlight in this case— "would have a cause of action against the" Insurer Defendants for any alleged bad faith in refusing to settle MSR's claim against Highlight. *Posluns v. Auto Owners Ins. Co.*, No. 232806, 2003 WL 21186633, at *2 (Mich. Ct. App. May 20, 2003). Thus, MSR's claim that Insurer Defendants acted in bad faith by refusing to settle with MSR must be dismissed.

### 3. Failure to Timely Pay Insurance Claim (Mich. Comp. Laws § 500.2006)

Finally, to the extent that MSR is asserting an entitlement to penalty interest under Mich. Comp. Laws 500.2006(4) in Count III, it is notable that none of the Insurer Defendants addressed the applicability of the penalty-interest provision.[5] *See* ECF Nos. 21 at PageID.100; 22 at PageID.129–30; 23 at PageID.156. Nonetheless, this claim will be dismissed, albeit without prejudice.

MSR is correct that Michigan law requires a "person"—which includes insurance producers, solicitors, counselors, and adjusters—to timely pay claims by

---

[5] The Insurer Defendants' motions for summary judgment all frame Count III as a bad faith failure to settle claim. *See* ECF Nos. 21 at PageID.100; 22 at PageID.129; 23 at PageID.156. This is so despite MSR's numerous citations to Mich. Comp. Laws § 500.2006 in its complaint, *see* ECF No. 1-1 at PageID.20–23. And when MSR responded to the Insurer Defendants' motions for summary judgment, it again cited Mich. Comp. Laws § 500.2006 several times. *See* ECF Nos. 24 at PageID.215–16; 29 at PageID.410–12; 32 at PageID.616–17. But no Insurer Defendant filed a reply to address Count III as it related to Mich. Comp. Laws § 500.2006.

third party tort claimants. *See* Mich. Comp. Laws § 500.2006; *see also* Mich. Comp. Laws § 500.2003(2) (defining "person"). And if the insurer fails to timely pay a third-party tort claim, the statute provides that the insurer must pay 12% per annum interest on the benefits due "from a date 60 days after satisfactory proof of loss was received by the insurer" *if* the following three conditions are satisfied: (1) the claim is not reasonably in dispute; (2) the insurer has refused payment in bad faith; *and* (3) the bad faith was determined by a court of law. Mich. Comp. Laws § 500.2006(4).

Importantly, the record at before this Court does not establish that MSR is a third-party *tort* claimant. And MSR presents no evidence to support such a characterization of its claims. *See generally* ECF Nos. 24; 29; 32; *see also* fn 4, *infra*. But even assuming MSR is a third-party tort claimant entitled to penalty interest under Mich. Comp. Laws § 500.2006,[6] such a claim appears to be premature at this juncture, as legal writers suggest that "a judgment against the insured is generally a precondition to any such [third-party] claim" for penalty interest under Mich. Comp. Laws § 500.2006. James Bradley & Drew W. Broaddus, Nickola *and the Limitations on Penalty Interest Awards in Tort Actions*, MICH. BAR J., June 2018 at 34.

---

[6] Admittedly, the legal authority addressing *how* a third-party tort claimant might go about pursuing statutory penalty interest under this provision is sparse. Indeed, most of the legal authority addressing penalty interest under Mich. Comp. Laws § 500.2006 does so in the context of an insured pursuing an award of penalty interest from its insurer. *See, e.g.*, *Nickola v. MIC Gen. Ins. Co.*, 894 N.W.2d 552 (Mich. 2017); *Griswold Props., L.L.C. v. Lexington Ins. Co.*, 741 N.W.2d 549 (Mich. Ct. App. 2007); *Yaldo v. N. Pointe Ins. Co.*, 578 N.W.2d 274 (Mich. 1998).

(https://www.michbar.org/file/barjournal/article/documents/pdf4article3401.pdf

(https://perma.cc/7LSX-MD7Y). Indeed, as the Honorable George Caram Steeh

recognized in 2018, a plaintiff will have no action for penalty interest unless he *first*

succeeds on the claim underlying entitlement to insurance policy proceeds. *ID*

*Ventures, LLC v. Chubb Custom Ins. Co.*, No. 17-14182, 2018 WL 1792372, at *5

(E.D. Mich. Apr. 16, 2018). In this way, an entitlement to penalty interest requires

establishing more than just *denial* of a claim for insurance benefits. *See State Farm*

*Mut. Auto. Ins. Co. v. Radden*, No. 14-13299, 2016 WL 695598, at *2 (E.D. Mich.

Feb. 22, 2016).

Thus, to the extent that MSR is asserting an entitlement to penalty interest

from the Insurer Defendants under Mich. Comp. Laws 500.2006(4) in Count III, that

claim will be dismissed without prejudice.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that the Insurer Defendants' motions for

summary judgment, ECF Nos. 21; 22; 23, are **GRANTED**.

The following counts against the Insurer Defendants are **DISMISSED WITH**

**PREJUDICE**:

| COUNT | CLAIM |
|---|---|
| I | Breach of Contract claim against Insurer Defendants |
| II | Breach of Contract claim against Insurer Defendants |
| III | Fraudulent Insurance Act claim under Mich. Comp. Laws § 500.4503 against Insurer Defendants |
| III | Bad Faith Refusal to Settle claim against Insurer Defendants |

However, the following count against the Insurer Defendants is **DISMISSED**

**WITHOUT PREJUDICE:**

| COUNT | CLAIM |
|-------|-------|
| III | Entitlement to statutory penalty interest under Mich. Comp. Laws § 500.2006(4) |

**This is not a final order and does not close the above-captioned case**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 11, 2025

- 17 -